# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EUGENE DARRYL MCKNIGHT**                    **CIVIL ACTION**

**VERSUS**                                    **NO.:    15-2195**

**LANCE MOORE, WARDEN**                       **SECTION: "J"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### *Procedural History*

Petitioner, Eugene Darryl McKnight, is a state prisoner incarcerated at the LaSalle Correctional Center in Olla, Louisiana.    On July 26, 2012, he pleaded guilty to multiple narcotics counts, which included two counts of distribution of cocaine and one count each of possession with intent to distribute cocaine, disguising transactions involving drug proceeds and possession of hydrocodone (Docket No. 520117); possession of marijuana (Docket No. 520118); possession of cocaine; possession of clonazepam; possession of alprazolam; and

possession of hydrocodone (Docket No. 520119); and finally, possession of marijuana (Docket No. 520120).[1]   On that same date, as per the guilty plea agreement, he also admitted the allegations in the State's multiple bill of information and was sentenced as a second felony offender on one count of cocaine distribution to fifteen (15) years imprisonment without benefit of probation or suspension of sentence.   He was sentenced to five years imprisonment on each of the four remaining counts under docket number 520117; five years imprisonment on each of the four counts of possession under docket number 520119; and six months imprisonment each on the two counts of possession of marijuana.[2]   The trial court ordered all sentences to run concurrently with each other. McKnight did not appeal the convictions or sentences.

On or about November 27, 2012, he filed a motion to correct an illegal sentence in the state district court.[3]   That motion was denied on December 10, 2012.   On January 9, 2013, he filed a "motion to enforce promise and agreement made by drug enforcement agent administration" in the state district court.[4]   That motion was denied on January 10, 2013.

---

[1] State Rec., Vol. 1 of 3, Minute Entry, July 26, 2012; *see also* Bills of Information, St. Tammany Parish.

[2] State Rec., Vol. 1 of 3, Transcript of Guilty Plea and Sentencing (July 26, 2012), pp. 17-20.

[3] State Rec., Vol. 1 of 3, Motion to Correct Illegal and Invalid Sentence with Order signed December 10, 2012.

[4] State Rec., Vol. 1 of 3, Motion to Enforce with Order signed January 10, 2013.

On April 5, 2013, he filed an application for post-conviction relief with the state district court in which he raised three broad and general claims for relief: (1) his conviction was obtained in violation of the state and federal constitution; (2) the court exceeded its jurisdiction on prosecution; (3) the time limits on prosecution expired.[5]    That application was denied following a contradictory hearing that concluded on December 17, 2013.[6]    On January 21, 2014, McKnight filed a related writ application with the Louisiana First Circuit Court of Appeal.[7]    On May 5, 2014, the court of appeal denied relief.[8]    On March 27, 2015, the Louisiana Supreme Court denied his application for supervisory writs.[9]

---

[5] These vague stated grounds for relief included more specific claims which he outlined in rather convoluted detail in a 31-page handwritten memorandum in the state courts.    Those claims included an allegation that the trial judge improperly negotiated the plea bargain directly with petitioner.    An evidentiary hearing was held mainly to address this issue (*i.e.*, whether his guilty plea was made knowingly and voluntarily).    Before the evidentiary hearing, McKnight filed two motions seeking the appointment of stand-by counsel for assistance during the hearing.    Both motions were denied and he sought mandamus relief in the court of appeal on a supervisory writ, No. 2013-KW-1669.    State Rec., Vol 1 of 1 (First Supplemental).    The court of appeal denied relief on January 17, 2014. *State v. McKnight*, 13-KW-1669 (La. App. 1st Cir. Jan. 17, 2014) (unpublished).    State Rec., Vol. 1 of 3.    Nevertheless, a review of the motion hearing transcript shows that at both the initial hearing held October 31, 2013 and the continued hearing held December 17, 2013, McKnight had the assistance of an appointed public defender.

[6] State Rec., Vol. 2 of 3, Transcript of Motion Hearing (December 17, 2013), pp. 25-26.    *See also* Transcript of Motion Hearing, part one (October 31, 2013).

[7] State Rec., Vol. 1 of 1 (Second Supplemental), Louisiana First Circuit Writ Application No. 2014-KW-0165.

[8] State Rec., Vol. 2 of 3, *State v. McKnight*, 2014-KW-0165 (La. App. 1st Cir. May 5, 2014) (unpublished writ ruling).

[9] State Rec., Vol. 3 of 3, *State ex rel. McKnight v. State*, 2014-KH-1155 (La. 3/27/15),

On May 15, 2015, McKnight filed a writ of *habeas corpus* in the state district court.[10] That application was denied on May 27, 2015.

On June 11, 2015, McKnight filed his federal application for *habeas corpus* relief.[11]  In his petition, he expressly asserts only two grounds for relief:    that his conviction was unconstitutionally obtained by an unlawfully induced and involuntary plea of guilty and that the trial court exceeded its jurisdiction.    Broadly and liberally construed, however, he also appears to claim that: (1) his guilty plea conviction for two charges of distribution of cocaine violated due process because he had not been arrested or booked, read his rights or accorded a 72-hour hearing on these offenses and the prosecutor falsely stated to the trial court that he had been arrested for these crimes; (2) his guilty plea was unlawful because the trial judge impermissibly participated in the plea negotiations; (3) the multiple offender adjudication was invalid and denied him due process because the State prematurely filed the multiple bill; and (4) he received ineffective assistance of counsel for failing to adequately investigate and file pretrial motions or meet with him at the prison to discuss the case, and by arranging a plea negotiation with the trial judge.[12]

The State filed a response, conceding that the federal application is timely and that

---

162 So.3d 377.

[10]   State Rec., Vol. 2 of 3, Writ of *Habeas Corpus* with Order signed May 27, 2015.

[11]   Rec. Doc. 1, 28 U.S.C. § 2254 Petition for Writ of *Habeas Corpus*.

[12]   Rec. Doc. 1, pp. 29-31.

state-court remedies have been exhausted as to all of the claims.      McKnight filed a traverse and also a motion for summary judgment, which was construed as a further traverse to the State's response.[13]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d) (1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.      A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[13]  Rec. Docs. 14, 18-19.

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.   *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).   An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."   *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.   A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.   *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").   "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA."   *Harrington v. Richter*, 562 U.S. 86 (2011).   Section 2254(d) preserves authority to issue the writ in cases where

6

there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Analysis*

1. *Defective Bill of Information and False Statements by Prosecutor*

McKnight contends the bill of information was constitutionally defective because the District Attorney lacked any basis to charge him with two counts of distribution of cocaine. In support, he points to documentation surrounding his arrest on February 1, 2012.[14]   He argues that none of those documents reflect that he was ever arrested or booked with an offense of distribution of cocaine.   The state courts denied relief on this claim without stated reasons.[15]

---

[14]   Rec. Doc. 1, Petition (attached Exhibits H-L).

[15]   Although the state district court did not make an express ruling with supportive reasons on this particular claim, the court arguably suggested that any issue regarding sufficiency of the indictment or sufficiency of evidence underlying his guilty plea was waived by McKnight's guilty plea.       During the evidentiary hearing, McKnight attempted unsuccessfully to argue the claim.    The State objected based on relevancy and argued that he waived all non-jurisdictional claims by pleading guilty.    The trial court sustained that objection, but took judicial notice of the documents.    State Rec., Vol. 2 of 3 (Motion Hearing 10/31/13), pp. 20-24.    "[O]nce a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived.... This includes all claims of ineffective assistance of counsel, *except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir.

Initially, to the extent McKnight contends the filing of the bill of information charging two counts of distribution of cocaine violated state law, his claim must be rejected.    It is well-established that federal *habeas* review is limited to questions of a constitutional dimension. *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998). Arguments that a trial court violated state law "do not constitute an independent basis for federal habeas relief."    *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.), *cert. denied*, 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 731 (1988), citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law").

The sufficiency of a state indictment or bill of information is not a matter for federal *habeas corpus* relief unless the charging instrument was so defective that the convicting court had no jurisdiction such that a valid state conviction could not result from the facts provable under the instrument under any circumstances.    *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).    Here, the state courts, including specifically the Louisiana Supreme Court, were presented with McKnight's challenge to the bill of information and, in denying relief on this claim, necessarily, albeit implicitly, found that it properly conferred jurisdiction upon the state trial court.    To the extent the state courts found that the

---

1983) (citations omitted).

charging document was legally sufficient as a matter of state law, the federal courts have no authority to overrule or second-guess the state courts' rulings on the interpretation or application of their own procedural rules.    "The principle that state courts are the final arbiters of state law is well-settled." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.*, 706 F.3d 622, 629 (5th Cir. 2013); *accord Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Moreover, even upon review of the claim it is clear McKnight was not misled as to the nature of the charges against him.    He clearly had fair notice of the charges and an adequate opportunity to mount a defense to these charges.    The Supreme Court has held that an indictment or bill of information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy.    *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953).

In the instant case, the bill of information charged McKnight with distribution of cocaine as follows:

> COUNT 1
> R.S. 40:967A DISTRIBUTION OF A SCHEDULED II
> Eugene D. McKnight, on or about January 30, 2012, by knowingly and intentionally distributing a Schedule II controlled dangerous substance, to-wit:    Cocaine

COUNT 2
R.S. 40:967A DISTRIBUTION OF A SCHEDULED II
Eugene D. McKnight, on or about February 1, 2012, by knowingly and intentionally
distributing a Schedule II controlled dangerous substance, to-wit:     Cocaine

The bill of information clearly notified McKnight of the statutory provisions he was accused

of violating and specified the date of each crime.     In fact, these two offenses stemmed from

an ongoing criminal narcotics investigation conducted by the St. Tammany Parish Sheriff's

Office and, specifically, two separate instances of a controlled purchase of crack cocaine

involving McKnight on January 30, 2012 and February 1, 2012.[16]     Following the transaction

on February 1, 2012, officers pursued McKnight's vehicle, stopped him for a traffic violation,

and placed him under arrest.     He was booked with possession with intent to distribute

crack cocaine, possession of marijuana, transactions involving proceeds from drug offenses

and two counts of possession of Lortab.[17]     He was subsequently released on bond, but later

arrested and charged with additional criminal offenses in March 2012.     Several bills of

information were filed by the District Attorney's office charging numerous offenses that

occurred between January 30, 2012 and March 3, 2012.     He was arraigned and entered an

initial plea of not guilty to these charges on June 1, 2012.[18]

---

[16]   State Rec., Vol. 1 of 3, Police Investigative Report Narrative, February 27, 2012.

[17]   State Rec., Vol. 1 of 3, Complaint Arrest Affidavit, February 27, 2012.

[18]   *Id.*, Minute Entry, June 1, 2012.

McKnight claims that because distribution of cocaine was not among the five offenses for which he was arrested on February 1, 2012, but a later-added charged offense,[19] the District Attorney had no authority to include these charges in the bill of information.[20] As the State notes, the record contains evidence of the charged offenses for distribution of cocaine. Regardless, the nature of the offenses charged by the police upon arrest in no way restricts or limits the District Attorney's independent authority to charge a different offense. Under Louisiana law, the District Attorney has entire charge and control of every criminal prosecution in his district and determines whom, when and how he will prosecute. La. C.Cr.P. art. 61; LSA-Const. Art. V, § 26(B) ("Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district...."). Therefore, the mere fact that McKnight was placed under arrest in connection with the traffic stop and charged with different offenses, including possession with intent to distribute cocaine, had no impact whatsoever on the District Attorney's authority to charge McKnight with distribution offenses associated with

---

[19] State Rec., Vol. 1 of 3, St. Tammany Parish Sheriff's Office Offense Report.

[20] The Court notes to the extent he argues that he was not accorded a 72-hour hearing on these offenses, the claim is without merit. Even if there was a violation of La. C.Cr.P. art. 230.1 in this case, which is an issue this Court need not and does not reach, it is of no moment for the purposes of this federal proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1983).

the ongoing narcotics investigation.   *State v. Jones*, 09-478 (La. App. 5th Cir. 2009), 28 So.3d 1099, 1104-05, *writ denied* 62 So.3d 121 (2011).[21]   Indeed, the bill of information fairly informed McKnight of the precise charges against him so that no prejudice resulted from either surprise or lack of notice, and protected him against further prosecution for the same crime.   Therefore, the bill of information was not fatally defective so as to deprive the trial court of jurisdiction under state law.

In connection with the preceding claim, McKnight also argues that the state prosecutor intentionally misled the court during guilty plea proceedings by misrepresenting that McKnight had been arrested for distribution of cocaine.   He points to the following exchange at the start of the guilty plea proceedings:

THE COURT:

If somebody would recite the various bill numbers for me on the record.

---

[21]  In *State v. Jones*, applying La. C.Cr.P. art. 61, the Louisiana Fifth Circuit found:

With regard to the heroin charge, defendant contends the State failed to prove chain of custody as to the heroin evidence, and that police failed to book him with possession of heroin. Deputy Borne testified that, with respect to the heroin, he booked defendant with introduction of contraband into a penal institution under LSA–R.S. 14:402. Despite defendant's complaint concerning the heroin charge, the district attorney acted within his authority under LSA–C.Cr.P. art. 61 when he chose to charge defendant with possession of heroin, a different offense. As long as the State proved the elements of the charged offense of possession of heroin, it is of no consequence that the police arrested him for a different offense.

*Jones*, 28 So.3d at 1104-05 (footnote omitted).

MR. OUBRE:

> Sure, Judge.    The oldest case we have is docket number 520117 and
> 520118.    That's the distribution cases and the arrest of the defendant
> involving distribution.

> And we have 520119/20, a subsequent arrest after release on the
> distribution, arrest date 3-3-12.    That involves several counts of
> possession.[22]

As is clear from this exchange, the trial judge inquired about the bill of information numbers and associated criminal charges.    The specific charges were lodged by the District Attorney and the prosecutor's statements relating those charges was directly responsive and entirely accurate.    The statements were neither false nor misleading.

Furthermore, McKnight's factual allegations do not indicate that his plea was not knowingly and voluntarily entered, because he was obviously aware of the alleged misrepresentations of the facts that supported the charges against him at the time he entered the plea.    He waived his factual objections when he pleaded guilty to the underlying charges.    Due process requires that the court grant *habeas* relief only when the errors of the state court make the underlying proceeding fundamentally unfair.    *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).    The prosecutor's statement did not unfairly prejudice McKnight so as to deprive him of due process during the proceedings. Accordingly, petitioner is not entitled to federal *habeas corpus* relief on these claims.

---

[22]   State Rec., Vol. 1 of 3, Transcript (July 26, 2012), p. 2.

14

2. *Involuntary Guilty Plea*

McKnight contends his guilty plea was coerced and involuntary because the trial judge participated in the guilty plea negotiations and impermissibly held a conversation directly with McKnight, with the attorneys present, in chambers.    He further contends "the judge's role was the advocate for the agreement and not a neutral arbiter, by holding the negotiation himself eyeball to eyeball with the petitioner [t]hus creating a misleading impression of his role and a coercing role to get the petitioner to except [sic] his proposed plea and the primary reason for 556.1C and Rule 11 is that the judge participation in plea negotiation is inherently coercive."[23]    As a result, McKnight claims the judge's participation violated state and federal law and constituted a violation of his right to due process. McKnight also suggests that defense counsel provided ineffective assistance in arranging the conference with the trial judge because the trial judge's participation made any plea deal invalid and involuntary.

McKnight raised this claim in an application for post-conviction relief in the state

_____

[23]   Rec. Doc. 1, pp. 35-36.    He points to Louisiana Code of Criminal Procedure article 556.1 C, which states, "[t]he court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered."    Federal Rule of Criminal Procedure 11 (c)(1) instructs that "[t]he court must not participate in [plea] discussions."    *See United States v. Davila*, 133 S.Ct. 2139 (2013) ("Rule 11(c)(1) was adopted as a prophylactic measure, not one impelled by the Due Process Clause or any other constitutional requirement").

courts.    Following an evidentiary hearing, which included the testimony of the presiding criminal judge, the state prosecutor, and defense attorney, the state district court denied the claim as meritless.    The state district court found that the plea complied with *Boykin*, and that it was not unduly influenced by the trial judge's participation in the plea negotiation process.[24]    The claim was likewise rejected by the appellate courts.

Initially, to the extent that McKnight relies upon Louisiana Code of Criminal Procedure article 556.1 (C) and Rule 11 of the Federal Rules of Criminal Procedure as bases for his claim of judicial misconduct concerning his guilty plea, neither of these rules provides a federal constitutional basis for challenging the trial judge's behavior, as required to establish a claim for relief in this § 2254 proceeding.    *See Miles v. Dorsey*, 61 F.3d 1459, 1466-67 (10th Cir. 1995); *Rutledge v. Cain*, Civ. Action No. 08-0546, 2009 WL 3514635, at *10 (W.D. La. Oct. 29, 2009) (citing *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981)); *Flores v. Estelle*, 578 F.2d 80, 85 (5th Cir. 1978) ("a state judge's participation in plea bargaining does not per se violate any federal constitutional provision").    Nor will federal courts review a state court's interpretation of its own law in a federal *habeas corpus* proceeding.    *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986).

McKnight also argues that his guilty plea was involuntary because the trial judge impermissibly engaged in plea discussions with him.    "A guilty plea will be upheld on

---

[24]  State Rec., Vol. 2 of 3, Transcript (December 17, 2013), pp. 25-26.

habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000) (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead ... without being coerced to do so, the ... plea ... will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981). A plea therefore "is constitutionally valid only to the extent it is both 'voluntary' and 'intelligent.' " *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.' " *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

To the extent he asserts that the trial court's participation in plea negotiations rendered his guilty plea involuntary, McKnight has not shown that the state courts' decisions rejecting the claim were contrary to or an unreasonable application of federal law. The record in this case reflects that McKnight was informed of his rights and signed a written waiver of those rights. He stated in open court that he was not forced to enter the guilty plea and that he understood he had the right to plead not guilty. He further acknowledged that he understood the rights he was waiving, including the privilege against self-

incrimination, the right to trial by jury and the right to confront his accusers in court. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).    He was advised of the nature of the charges to which he was pleading guilty and he admitted to each of those charges individually as set forth by the trial court.

McKnight does not challenge his understanding of the charges or the waiver of his constitutional rights by pleading guilty.    Instead, he claims that the plea was coerced because the trial judge participated in pretrial plea negotiations.    It is not disputed that the trial court did engage in discussions with McKnight in chambers at defense counsel's request. That request was necessary because McKnight expressed doubt in his defense counsel's sincerity when he explained the charges and penalty McKnight faced if convicted, which adversely affected defense counsel's ability to engage in meaningful plea discussions with his client.    The chambers discussion was not transcribed because the recording equipment was set up in the courtroom; however, the content and import of the meeting was related through the testimony of the individuals who were present at the time, which included the trial judge, defense counsel and the state prosecutor.    Judge Garcia testified during the post-conviction hearing as follows:

> A.    As far as I can remember, I haven't had an opportunity to review the file or the disciplinary complaint which I responded in detail to the same allegations, as I recall the defendant was faced with a potential quad bill, a life sentence.    The District Attorney was willing to charge him with a double bill and I was offering the minimum sentence under the double bill of fifteen (15) years.    And as I further recall Mr. Farrara relayed that to the defendant and came back to me and said, Judge, would you please help me explain this to my client.    I don't think he understands the import of not accepting this plea.

18

Apparently his counsel had informed him as to the relative merits of his case and why it would be important to accept such a plea, and I agreed to discuss that with his client, and did so in chambers with his attorney, with the District Attorney, with my Minute Clerk, my Law Clerk and my Bailiff at least, and there may have been other persons in my chambers at the time.

Q.    And did you in any way force him to take this plea?

A.    No.    I was very careful to explain to him that I felt it was my obligation to determine that he understood what it meant to turn down the plea.    I said, I need to be very careful to make sure that you understand that if you do not accept the plea and you go to trial and you are found guilty that you would be looking at the potential of a life sentence.    I felt it was my obligation to make sure that he completely understood that and that was the only tenor of that conversation.[25]

The trial judge's testimony was verified as one-hundred percent accurate according to the prosecutor, Mr. Oubre.[26]    Defense counsel similarly testified that despite candid discussions with McKnight he refused to believe that counsel was being truthful and that he actually could face the potential of life in prison if convicted.    As counsel testified during the hearing, he suggested to his client that he would ask the judge, "if he would have an opportunity for us to have a pre-trial conference, if he would be willing to invite you, because I want you to hear, I don't want you to think anybody is doing anything behind your back, would he allow you with the Assistant D.A., Joey Oubre, to sit down and go over what the plea

---

[25]    State Rec., Vol. 2 of 3, Post-Conviction Hearing Transcript (October 31, 2013), pp. 5-7

[26]    *Id*. at 16.

was, and answer any of your questions."[27]   The judge agreed to meet with them.   The conference between the parties transpired in chambers and was later confirmed on the record in open court.

This claim centers on McKnight's faulty and unsupported premise that any and all judicial involvement with a defendant during plea negotiations is prohibited because it is "inherently coercive," such that it renders a guilty plea unconstitutional.   He cites no controlling United States Supreme Court law for this proposition, however, and in fact, none exists.   His reliance on federal law applying Rule 11 of the Federal Rules of Criminal is misplaced.   As previously stated, there is no constitutional prohibition applicable to the state courts, barring a state trial judge's participation in plea negotiations.[28]   The question is simply whether or not that participation impermissibly influenced his decision to plead guilty.   McKnight points to no particular statements made by the trial judge that in any way forced, intimidated or compelled him to enter a guilty plea.   McKnight's plea colloquy plainly demonstrates that his plea was voluntary, and he has presented no evidence to the contrary.

The trial court advised McKnight, as required by law, of the maximum sentence he

---

[27]   State Rec., Vol. 2 of 3, Post-Conviction Hearing Transcript (December 17, 2013), p. 6.

[28]   Nor does an absolute prohibition exist under Louisiana law with regard to a trial court's participation in plea negotiations.   *State v. Bouie*, 817 So.2d 48, 54 (La. 2002).

faced if he chose to go to trial.   *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990);

*Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), *cert. denied*, 474 U.S. 838 (1985).   At

this point, despite his initial doubts that it might not be in his best interest to plead guilty,

McKnight accepted the reality that he could either proceed to trial and risk the penalty of life

imprisonment as a fourth-felony offender based on his lengthy criminal history or accept an

extremely generous plea arrangement where he would receive the minimum 15-year

sentence as a second-felony offender.   By accepting that beneficial plea agreement and

pleading guilty, McKnight guaranteed himself a significantly lower sentence.   Coercion is

not established by a guilty plea that represents a voluntary and intelligent choice among the

alternatives available to a defendant to avoid a possible longer sentence.[29]   *North Carolina*

*v. Alford*, 400 U.S. 25, 31 (1970).   McKnight was aware of the charges he faced as well as the

constitutional rights he waived by entering the plea, and the consequences of that plea.   He

has not shown that his plea was coerced or involuntary.   The state courts' decisions

denying relief on this claim were not contrary to, or an unreasonable application of, United

States Supreme Court law.   He is not entitled to relief on this claim.

3. *Multiple Offender Adjudication*

McKnight contends his multiple-offender adjudication violated Louisiana Revised

Statute 15:529.1 and denied him due process because the bill of information was filed

---

[29]   Similarly, under state law, no inherent coerciveness is shown when a trial judge explains the possible penalties a defendant would face if tried and convicted by a jury compared to those offered in a plea agreement.   *Bouie*, 817 So.2d at 55.

prematurely by the District Attorney before McKnight had been convicted on the underlying charge (*i.e.*, had formally entered his guilty plea on the record in open court to any of the charges).    The state courts rejected without reasons McKnight's claim regarding the timing of the State's filing of the multiple bill.    The record in this case demonstrates that the state courts' decisions denying this claim were not contrary to or an unreasonable application of federal law.

The transcript reveals that at the start of the guilty-plea proceedings, the trial court inquired if the State was filing a multiple bill of information at this time.    The State answered affirmatively stating, "[i]n contemplation of a plea, I have prepared a multi bill alleging that Mr. Eugene McKnight is a double bill and that he has been previously convicted in docket number 264022 on 8-25-97 for 40:967 A, distribution of cocaine."    At this point, the trial court engaged in a guilty-plea colloquy with McKnight regarding the allegations contained in the multiple bill.    McKnight acknowledged that he understood the rights he would be waiving and that he wished to admit the allegations in the multiple bill and waive a reading of the bill.    The trial court found that he had previously been convicted as alleged in the multiple bill, which formed the basis for him being charged as a second-felony offender in Case Number 520117.

The trial court then engaged in a plea colloquy during which McKnight pleaded guilty to all of the underlying charges.    McKnight acknowledged during this colloquy that he had reviewed his constitutional rights with his attorney and initialed and signed the guilty-plea

waiver-of-rights form indicating he understood those rights.   Following his guilty plea in open court, the trial court rendered sentence on the charges, including the 15-year multiple offender sentence on count one for distribution of cocaine.

As an initial matter, the application and interpretation of Louisiana's habitual offender statute is an issue left to the Louisiana Supreme Court.   A state's failure to follow its own sentencing procedures is not reviewable through federal *habeas corpus. Joseph v. Butler*, 838 F.2d 786, 789 n. 2 (5th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).   As stated earlier, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."   *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).

This Court's analysis focuses on due-process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair.   *Lisenba v. California*, 314 U.S. 219, 236-37 (1941); *Neyland v. Blackburn*, 785 F.2d at 1293.   A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial.   *Neyland*, 785 F.2d at 1293; *Peters v. Whitley*, 942 F.2d 937, 940. (5th Cir. 1991).

McKnight alleges the multiple-offender adjudication was unfair solely because the State prematurely filed the multiple bill.   He does not otherwise dispute the sufficiency of the multiple bill or the validity of his guilty plea to the multiple bill of information.   As the Fifth Circuit has recognized, "this additional bill of information is merely a method of

23

informing the court of the circumstances and of requesting an enhancement of the penalty to be imposed." *Buckley v. Butler*, 825 F.2d 895, 902 (5th Cir. 1987) (citing *State v. Alexander*, 325 So.2d 777 (La.1976); *State v. Jackson*, 298 So.2d 777 (La.1974)).   Moreover here, the multiple bill and proceedings thereon were part and parcel of the guilty plea proceedings leading to conviction and ultimately sentencing.   McKnight had signed a written plea waiver form and he had ample notice that the State planned to file a multiple bill charging him as a second-felony offender because this was part of the plea agreement. McKnight has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation under these circumstances, and this Court is aware of none.   Claims that a state court improperly applied state law do not constitute an independent basis for federal *habeas* relief.   *Estelle v. McGuire*, 502 U.S. at 67. Accordingly, the denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.   McKnight is not entitled to relief on this claim.

4. *Ineffective Assistance of Counsel*

Finally, McKnight contends he received ineffective assistance of counsel because counsel filed limited pretrial motions and failed to adequately investigate or visit him at the jail to discuss the case.   He also argues that counsel performed deficiently by arranging a pretrial conference with the trial judge to discuss plea negotiations because this invalidated his guilty plea.   He asserted these grounds in his post-conviction relief application, which was denied by the state courts.   McKnight has not established that the state courts' denial

of these claims was contrary to, or an unreasonable application of, *Strickland*.

The Supreme Court's holding in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, applied by the Louisiana courts, is the appropriate standard for judging the performance of counsel when a defendant pleads guilty.   *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).   Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.   *Strickland v. Washington*, 466 U.S. at 697.   A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 58-59. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Because the state courts rejected McKnight's ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

McKnight faults counsel for failing to conduct adequate investigation or meet with

him at the jail.    He asserts that counsel failed to file pretrial motions on his behalf or pursue

a preliminary examination.    He disputes the basis for the distribution charges for the

reasons previously addressed in this report.    He also argues that officers had no probable

cause to conduct a traffic stop and to search and seize evidence from his vehicle without a

warrant.    McKnight maintains that additional investigation would have revealed that no

traffic citation was ever issued, no knife was listed on the evidence report contrary to the

detective's case report and no justification existed in the probable cause determination for

the search of the vehicle.

First and foremost, McKnight does not allege that his trial counsel's alleged errors led

him to enter the guilty plea or that, but for counsel's alleged errors, he likely would not have

entered the guilty plea.    Instead, his arguments relate to the inadequacy of defense

counsel's performance before advising him to enter the plea.    Thus, even construed

broadly, McKnight does not allege that there is a substantial probability that he would not

have entered a guilty plea, and would have insisted on proceeding to trial, if his attorney had

not committed the alleged errors.    Without this showing, this Court cannot find that he was

prejudiced by his counsel's performance under the standards set forth in *Hill* and *Strickland*.

In any event, McKnight has failed to establish that his counsel's performance was

objectively unreasonable or deficient under the circumstances.    He claims that defense

counsel met with him only at arraignment and the day of trial, which did not suffice for

effective communication or proper representation.[30]   McKnight therefore concedes that his

attorney met with him personally at least twice before he entered his guilty plea.    He offers

no reason why additional visits at the jail were necessary.    Moreover, McKnight has failed

to demonstrate or even allege how additional meetings would have affected the outcome of

the proceedings.   *See Moody v. Polk,* 408 F.3d 141, 148 (4th Cir. 2005) (quoting *United

States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988). ("there is no established minimum

number of meetings between counsel and client prior to trial necessary to prepare an

attorney to provide effective assistance of counsel"); *Schwander v. Blackburn*, 750 F.2d 494,

499-500 (5th Cir. 1985) (brevity of consultation time between a defendant and his counsel

does not in-and of-itself establish ineffective assistance of counsel).    As the United States

Fifth Circuit observed, "[i]n the guilty plea context… "[e]ffective assistance may be rendered

in the twenty or thirty minutes the appointed lawyer said he spent with [the defendant], or

counsel may remain ineffective despite a month of futile exertions." *Id.* at 500 (quoting *Diaz

v. Martin*, 718 F.2d 1372, 1378 (5th Cir. 1983), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2358, 80

L.Ed.2d 830 (1984).

　　　With regard to the adequacy of the investigation, counsel "has a duty to make

reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary.    In any ineffectiveness case, a particular decision not to

investigate must be directly assessed for reasonableness in all circumstances, applying a

---

[30]  Rec. Doc. 14, Traverse, p. 30.

heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Contrary to McKnight's claim that defense counsel conducted no investigation, the record shows that upon enrolling in the case and before advising McKnight to enter a guilty plea, counsel sought and obtained discovery, including all police investigative documents and reports, from the prosecution. Based on his thorough review and after consultation with McKnight, defense counsel decided to go forward with plea negotiations rather than pursue a preliminary examination or pretrial motions. McKnight cannot show that any beneficial evidence would have been revealed through additional investigation. *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Amos v. Cain*, Civ. Action No. 04-2029, 2008 WL 782472, at *8 (E.D. La. Mar. 20, 2008). Defense counsel explained, and this Court indeed is to presume, that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.[31] Moreover, the action taken by counsel appears objectively reasonable based on the record in this case.

Counsel cannot have been ineffective for failing to file a meritless motion. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile

---

[31] Frank Ferrara, Jr. submitted a detailed response as part of disciplinary proceedings filed against him by McKnight, which addressed the allegations of ineffective assistance, and that response was considered by the state district court and made a part of the record of the post-conviction proceedings. State Rec., Vol. 2 of 3, Hearing Transcript (December 17, 2013), p. 10. *See also* State Rec., Vol. 1 of 3, Disciplinary Board Response.

motions or objections.")); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).    In this case, McKnight cannot show that any charges or evidence would have in fact been dismissed or suppressed.[32]    Therefore, he has not demonstrated a reasonable probability exists that the outcome likely would have been different had counsel conducted more investigation or filed numerous pretrial motions.    Indeed, the circumstances of this case do not suggest that counsel's alleged failures to adequately investigate, consult with his client, or file pretrial motions resulted in prejudice to McKnight sufficient to affect the voluntariness of his guilty plea.    Nor, for the reasons previously discussed in this report did the trial judge's participation in plea discussions pursuant to counsel's request constitute deficient performance on the part of counsel or result in any prejudice.

The state courts' decisions rejecting his claims of ineffective assistance of trial counsel were neither contrary to nor an unreasonable application of *Strickland*.    Accordingly, McKnight is not entitled to *habeas* relief on this claim.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that McKnight's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

---

[32]    Additionally, as the State argues in its response, the issuance or non-issuance of a traffic citation has no bearing on the constitutionality of a stop. *See State v. Cole*, 131 So.3d 931, 937-939 (La. App. 5th Cir. 2013).    Even if the knife was not listed in the evidence report, the omission was not relevant to his guilty plea on the narcotics charges.    And for the reasons expressed earlier in this report, his unsupported allegations regarding invalid distribution charges are without legal justification.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this ___11th___ day of _____August_____,

2016.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[33] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.